2012 Ark. 118

**TYSON POULTRY, INC.**

v.

**Francisco NARVAIZ, Appellee.**

**No. 11–3.**

Supreme Court of Arkansas.

March 15, 2012.

Emma Diane Graham and Victor L. Crowell, Fort Smith, for appellant.

Conrad Thomas Odom, Fayetteville, and Timothy James Cullen, Little Rock, for appellee.

DONALD L. CORBIN, Justice.

Appellant, Tyson Poultry, Inc., appeals the order of the Workers' Compensation Commission finding that Appellee, Francisco Narvaiz, was entitled to additional temporary-total-disability benefits, wage-loss disability, and attorney's fees. For reversal, Appellant asserts that there was not substantial evidence to support the Commission's findings. The Arkansas Court of Appeals first heard this appeal and reversed the Commission's decision. *Tyson Poultry, Inc. v. Narvaiz*, 2010 Ark. App. 842, 2010 WL 5132119. Appellee petitioned for review, asserting that the decision of the court of appeals conflicted with a prior decision of the court of appeals, *Superior Industries v. Thomaston*, 72 Ark. App. 7, 32 S.W.3d 52 (2000), and erroneously applied the rules of statutory construction. *See* Ark. Sup.Ct. R. 2–4(c)(ii) & (iii) (2011); *see also* Ark. Sup.Ct. R. 1–2(b)(6) (2011). We granted review, and jurisdiction is properly in this court pursuant to Rule 1–2(e). When we grant review following a decision of the court of appeals, we consider the case as though it had been originally filed in this court. *Nat'l Bank of Ark. v. River Crossing Partners, LLC*, 2011 Ark. 475, 385 S.W.3d 754. Upon such review, we find no error in the Commission's decision and affirm it; the opinion of the court of appeals is vacated.

Appellee had previously been injured on the job and was working on light duty when he called his female supervisor an insulting, derogatory, and vulgar name ("mother-f--king bitch"). Appellant placed Appellee on suspension and then terminated his employment due to insubordination and gross misconduct. The administrative law judge (ALJ) denied Appellee's claim for temporary-total disability for the remainder of his disability period, as well as his claims for wage-loss benefits and attorney's fees.

The Commission reversed the ALJ's decision on the grounds that termination for misconduct is not a sufficient basis for a finding that the employee refused suitable employment under Ark.Code Ann. § 11–9–526 (Repl.2002), which provides that an injured employee who refuses suitable employment shall not be entitled to compensation during the period of his refusal. The Commission relied on *Thomaston*, 72 Ark.App. 7, 32 S.W.3d 52, in which the court of appeals strictly construed section 11–9–526 and held that when an employer terminates a claimant's employment due to his misconduct, the employee has not refused employment; rather, his employment has been terminated at his employer's option. Accordingly, in the present case, the Commission found that Appellee proved that he was entitled to additional temporary-total-disability benefits for the remainder of his disability period, that he was entitled to wage-loss benefits at the rate of five percent, and that he was thus entitled to attorney's fees.

In reversing the Commission's decision, the court of appeals departed from *Thomaston* by expressly limiting that case to its facts and stating without explanation that, "We think that the broad construction of the statutory language adopted in [*Thomaston*], implying as it does that no act of misconduct can ever constitute a refusal of employment, was unwarranted." *Narvaiz*, 2010 Ark.App. 842, at 2, 2010 WL 5132119. As noted, although we granted review, we treat this case as an appeal to us from the decision of the Commission, and we now address Appellant's three points for reversal of the Commission's decision. *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998).

As its first point for reversal, Appellant asserts that there is not substantial evidence to support the Commission's finding that Appellee proved he was entitled to

temporary-total-disability benefits. Because Appellee was performing light-duty work at the time his employment was terminated, and because Appellant offered testimony that Appellant would have continued to make the light-duty work available to Appellee absent his misconduct, Appellant contends that Appellee did not meet his burden of proving that he was totally incapacitated from earning gainful wages due to his compensable injury. Any incapacity from earning wages, argues Appellant, stemmed from Appellee's misconduct and not from his injury. Appellant's view is that, by engaging in misconduct, Appellee unjustifiably refused suitable work as contemplated in section 11–9–526. Section 11–9–526 states in its entirety as follows:

> If an injured employee refuses employment suitable to his or her capacity offered to or procured for him or her, he or she shall not be entitled to any compensation during the continuance of the refusal, unless in the opinion of the Workers' Compensation Commission, the refusal is justifiable.

Appellee responds that Appellant's attempt to characterize its termination of Appellee's employment as amounting to a refusal on Appellee's part to go to work is a broad misinterpretation of section 11–9–526. Appellee responds further that Appellant's argument overlooks the medical evidence that thoroughly describes the extent of Appellee's injury and the healing period that followed.

To be entitled to temporary-total-disability benefits, the claimant must remain in his healing period and be unable to earn wages. *Ark. State Hwy. & Transp. Dep't v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981); *St. Joseph's Mercy Med. Ctr. v. Redmond*, 2012 Ark. App. 7, 388 S.W.3d 45. Disability means "incapacity because of compensable injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the compensable injury." Ark.Code Ann. § 11–9–102(8) (Supp.2011). The healing period is "that period for healing of an injury resulting from an accident." Ark.Code Ann. § 11–9–102(12) (Supp.2011). Temporary-total disability is that period within the healing period in which a claimant suffers a total incapacity to earn wages. *RPC, Inc. v. Hargues*, 2011 Ark. App. 264, 2011 WL 1319384. To be entitled to temporary-total-disability benefits, the claimant must prove that he remains within his healing period and suffers a total incapacity to earn wages. *Id.* The question of when the healing period ends is a question of fact for the Commission. *Id.*

In ruling that Appellee had met his burden of proof in this case, the Commission stated as follows:

> The claimant contends that he did not refuse employment suitable to his capacity. A termination for misconduct is not a sufficient basis for a finding that an employee refused suitable employment. *See Superior Indus. v. Thomaston*, 72 Ark.App. 7, 32 S.W.3d 52 (2000). Like the claimant in *Superior Indus.*, the claimant did not refuse employment. The claimant accepted the employment offered him and was later terminated not by his choice, but at the option of the employer. *See Superior Indus.* at p. 11 [32 S.W.3d 52].

> The instant claimant underwent compensable left-shoulder surgery on January 31, 2008. The record therefore shows that the claimant remained within a healing period and was totally incapacitated from earning wages no later than January 31, 2008. The respondent paid temporary total disability benefits through April 28, 2008, but Dr. Kaler reported on that date that the claimant

had not reached maximum medical improvement. Dr. Kaler determined that the claimant reached maximum medical improvement as of August 6, 2008. The claimant proved that he remained within a healing period and was totally incapacitated from earning wages until August 6, 2008. The claimant therefore proved that he was entitled to additional temporary total disability benefits from April 28, 2008 through August 6, 2008.

■ In appeals involving claims for workers' compensation, we view the evidence in the light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. *Hudak–Lee v. Baxter Cnty. Reg'l Hosp. & Risk Mgmt. Res.*, 2011 Ark. 31, 378 S.W.3d 77. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Id.*

The evidence of record shows that Appellee sustained the compensable injury to his left shoulder on August 22, 2007, and began receiving medical treatment on August 28, 2007. He continued to work on light duty, and learned on November 29, 2007, that his injury was a complete tendon tear that would require surgery. Surgery occurred on January 31, 2008. Meanwhile, his misconduct and suspension for violation of company policies against insubordination and gross misconduct occurred on or about December 22, 2007, and when Appellee returned to work immediately following his suspension, Appellant terminated his employment. Appellant stopped paying temporary-total-disability benefits to Appellee on April 28, 2008. The treating physician determined Appellee to be at maximum medical improve-

ment on August 6, 2008. Based on this evidence before the Commission, substantial evidence supports its finding that Appellee had proved that he remained within a healing period and was totally incapacitated from earning wages until August 6, 2008, and that he had therefore proved that he was entitled to additional temporary-total-disability benefits from April 28, 2008, through August 6, 2008.

In addition to being supported by the foregoing substantial evidence, the Commission's decision is also supported by a correct interpretation of section 11–9–526. The Commission's reliance on *Thomaston,* 72 Ark.App. 7, 32 S.W.3d 52, was well placed for making the determination that Appellee's termination for misconduct was not a sufficient basis for a finding that he refused suitable employment. As we have previously noted, in *Thomaston,* the court of appeals strictly construed section 11–9–526 and expressly acknowledged that such a strict construction was required by the General Assembly's language in Act 796 of 1993:

When our General Assembly enacted Act 796 of 1993, it issued the following "Legislative Declaration," codified at Ark.Code Ann. § 11–9–1001 (Repl.1996):

The Seventy–Ninth General Assembly realizes that the Arkansas workers' compensation statutes must be revised and amended from time to time. *Unfortunately, many of the changes made by this act were necessary because administrative law judges, the Workers' Compensation Commission, and the Arkansas courts have continually broadened the scope and eroded the purpose of the workers' compensation statutes of this state.* The Seventy–Ninth General Assembly intends to restate that the major and controlling purpose of workers' compensation is to pay timely temporary and permanent disability benefits to all

legitimately injured workers that suffer an injury or disease arising out of and in the course of their employment, to pay reasonable and necessary medical expenses resulting therefrom, and then to return the worker to the work force. *When, and if, the workers' compensation statutes of this state need to be changed, the General Assembly acknowledges its responsibility to do so.* It is the specific intent of the Seventy–Ninth General Assembly to repeal, annul, and hold for naught all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act. *In the future, if such things as the statute of limitations, the standard of review by the Workers' Compensation Commission or courts, the extent to which any physical condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts.*

(Emphasis added.) If our workers' compensation laws are to be changed or broadened, this should be left to the legislature.

*Thomaston,* 72 Ark.App. at 11–12, 32 S.W.3d at 54–55. Indeed, when construing other workers' compensation statutes not at issue here, this court has acknowledged and followed the legislative declaration requiring strict construction of the workers' compensation statutes. *Nelson v. Timberline Int'l, Inc.,* 332 Ark. 165, 964 S.W.2d 357 (1998).

Since the court of appeals decided *Thomaston,* some twelve years ago, the General Assembly has not made any amendments or changes to section 11–9–526. "[T]he General Assembly is presumed to be familiar with the appellate courts' interpretation of a statute, and if it disagrees, it can amend the statute." *City of Fort Smith v. Carter,* 364 Ark. 100, 111 n. 4, 216 S.W.3d 594, 601 n. 4 (2005). Without such amendments, however, the appellate courts' interpretation of the statute remains the law. *Id.; Morris v. McLemore,* 313 Ark. 53, 852 S.W.2d 135 (1993).

We acknowledge Appellant's argument in its supplemental brief on review that we should in effect, now follow the view of section 11–9–526 expressed in the dissent in *Thomaston.* We have considered that competing view, and disagree, however, that that is the correct course to take. Rather, consistent with the legislative declaration requiring strict construction of workers' compensation statutes, we agree with the strict interpretation of section 11–9–526 given by the majority in *Thomaston.* The legislature has not amended the statute in any way to express its disagreement with the court of appeals' strict interpretation. The interpretation of section 11–9–526 given in *Thomaston,* therefore, became part of the law itself, and the Commission correctly followed that case in the present one. We have not here been presented with any compelling reason for abandoning prior judicial interpretation of a statute, especially in light of the twelve-year silence from the General Assembly. *See Nelson,* 332 Ark. 165, 964 S.W.2d 357. Notwithstanding Appellant's assertions to the contrary, such a strict interpretation does not defy common sense—the misconduct and insubordination presented in this case are just that, misconduct and insubordination, and nothing more. After committing the misconduct and suffering the suspension, Appellee returned to work. It was then Appellant's option to terminate

his employment or allow him to continue working light duty. Regardless of Appellant's choice, Appellee was still within his healing period.

We summarily reject Appellant's attempts to factually distinguish the present case from *Thomaston.* We simply are not persuaded that the factual distinctions alleged by Appellant, namely that *Thomaston* was silent with respect to any misconduct in violation of company policy and that the claimant in that case had fallen behind in his work, had any real bearing on that decision, nor are we persuaded that they should have any bearing on our current decision. We likewise summarily reject Appellant's argument that the present case is more closely aligned with *Roark v. Pocahontas Nursing & Rehabilitation,* 95 Ark.App. 176, 182, 235 |₉S.W.3d 527 (2006). *Roark* is inapposite as it involved a claimant whose employment was terminated for violation of her employer's *attendance* policy rather than a violation of a *conduct* policy as was Appellee's case. In addition, there was no discussion in *Roark* of the particular statute at issue here, section 11–9–526.

In summary, there was substantial evidence to support the Commission's finding that Appellee was entitled to temporary-total-disability benefits for the remainder of his healing period until August 6, 2008. In addition, the Commission correctly relied on *Thomaston* to conclude that Appellee's misconduct did not amount to a refusal of suitable employment. The strict interpretation of section 11–9–526 given by the court of appeals was required by the legislative declaration in section 11–9–1001, and there has been no legislative amendment of section 11–9–526 since *Thomaston.* Accordingly, the Commission's reliance on that case was entirely proper. The Commission's decision that Appellee met his burden of proving he was entitled to temporary-total-disability benefits for the remainder of his healing period, April 28, 2008, through August 6, 2008, is supported by substantial evidence and is a correct interpretation of statute. We therefore affirm that ruling.

■ As its second point for reversal, Appellant argues that Appellee did not prove that he was entitled to wage-loss benefits because he gave incredible testimony that conflicted with the medical evidence. Appellant argues further that, even if Appellee's testimony regarding his physical restrictions was accurate and the medical evidence correct, Appellee would still not be entitled to wage-loss benefits because his managerial work history, his transferrable skills, and his physical abilities enabled him to obtain employment at a much higher rate than |₁₀he had been receiving through Appellant. Finally, Appellant emphasizes that Appellee has a lack of motivation to work because he is retired from a previous job.

■ The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Lunday v. Entergy Ark., Inc.,* 2012 Ark. App. 169, —— S.W.3d ——. When determining wage-loss disability, the Commission should consider, in addition to medical evidence, the appellant's age, education, experience, and other matters affecting wage loss. *Glass v. Edens,* 233 Ark. 786, 346 S.W.2d 685 (1961). Another consideration is the claimant's motivation to return to work, as a lack of interest or a negative attitude impedes the assessment of the claimant's loss of earning capacity. *Lunday,* 2012 Ark. App. 169, —— S.W.3d ——. The Commission may use its own superior knowledge of industrial demands, limitations, and requirements in conjunction with the evidence to determine wage-loss disability. *Id.* It is the function of the Commission, not this court, to determine

the credibility of witnesses and the weight to be given to the evidence. *Id.*

Our review of the evidence before the Commission reveals the following substantial evidence. Appellee is a sixty-year-old male with an 8th grade education who did not obtain a GED. He worked for thirty-five years as a manual laborer at a sugar company where he also learned supervisory skills and other responsibilities. However, he was forced to retire from the sugar company. After his retirement, he began working for Appellant doing manual labor while visiting his son here in Arkansas. He sustained a compensable injury, and his physician opined that he had reached maximum medical improvement on August 6, 2008. His physician noted, however, that Appellee's prognosis for recovery was good, but not excellent; he further noted that although he initially stated that Appellee would have no physical restrictions after three months, he eventually assigned Appellee a two-percent, whole-person impairment rating. Appellee testified that, although he still felt pain in his shoulder and was limited in his physical abilities, he continued to seek work with other employers.

After considering the foregoing evidence, the Commission ruled as follows:

> Based on the claimant's age, limited education and work history, and based on the claimant's post-injury anatomical impairment, the Full Commission finds that the claimant proved he sustained wage-loss disability in the amount of 5%.

We acknowledge Appellant's argument that Appellee's credibility was at issue before the Commission. But this court does not weigh the credibility of the evidence on appeal, which is the exclusive function of the Commission. *Hudak–Lee*, 2011 Ark. 31, 378 S.W.3d 77. As recited above, there was indeed substantial evidence to support the Commission's decision that Appellee was entitled to wage-loss disability, and we therefore affirm that decision.

As its third and final point for reversal, Appellant contends that Appellee is not entitled to attorney's fees pursuant to Ark. Code Ann. § 11–9–715 because he has not proved that he is entitled to recover either temporary-total-disability benefits or wage-loss benefits. As we have rejected Appellant's arguments for reversal of the award of temporary-total-disability benefits and wage-loss disability benefits, we likewise reject Appellant's argument with respect to attorney's fees. Because Appellant has proved that he is entitled to receive temporary-total-disability benefits and wage-loss disability benefits, and because he prevailed on appeal to the Commission, he is statutorily entitled to attorney's fees as awarded by the Commission pursuant to section 11–9–715(a) and (b).

The Commission's decision is supported by substantial evidence and correct statutory interpretation, and we therefore affirm it. The decision of the court of appeals is vacated.

Special Justices STUART W. HANKINS and PHILLIP McMATH join in this opinion.

BAKER and GOODSON, JJ., not participating.